## Fahey v. York-Shipley, Inc.

*Markowitz & Liverant*, for plaintiff.
*Fisher, Ports & May*, for defendant.

ANDERSON, J., August 22, 1949.—This proceeding, which was originally listed for trial, now comes before the court on an agreement of facts in the form of a case stated.

A brief résumé of the facts reveals that plaintiff was employed by defendant as an industrial sales engineer on a $5,000 yearly drawing account to apply on commissions at the rate of four percent on business secured for his employer, a manufacturing concern. Between December 13, 1944, when he entered defendant's employment, and May 15, 1945, plaintiff obtained orders for defendant amounting to more than $838,-000, most of which involved contracts directly or indirectly with the United States Government for war supplies. All of these war contracts contained the usual war termination clause and pursuant thereto were terminated by the Government on or before August 15, 1945. Shortly thereafter, to wit, on or about August 20, 1945, plaintiff and defendant severed their employment relationship. Plaintiff was paid the com-

mission as agreed on all business shipped and delivered and on the parts of orders that were not terminated, amounting to $3,333.58, but also claims commission at four percent on the total amount of war contracts secured amounting in all to $33,542.24. Is plaintiff, Fahey, entitled to commissions on the undelivered portions of the orders which were properly terminated by the Government under the contract? This is the sole question at issue under the facts as stated.

Plaintiff takes the position that unless there is an agreement providing clearly to the contrary, one selling on a commission basis is entitled to the commission when a valid sale is made and cites numerous Pennsylvania cases to sustain this position. There seems no doubt that this is the general rule, but in the case at bar there is an agreement to the contrary in the form of the termination clause in each contract which is binding alike on the employer and the agent employe. It would indeed seem to be reductio ad absurdum to say under these circumstances that a salesman who had procured a large order from the Government, which was terminated by the Government the following day under its termination clause, because of the cessation of hostilities, would be entitled to the full commission on the order just as he would have been had the goods actually been manufactured and delivered. In the instant case it is to be noted that plaintiff received his commission on the goods actually processed and delivered and that the total of his additional claim amounting to over $33,000.00 is more than 50 percent of the amount actually received by defendant from the Government on the settlement of all the contracts involved, which was intended to cover all actual legitimate costs and expenses incurred. It is also apparent from a study of the exhibits that no amount was received in settlement by defendant to cover incurred selling costs although this does not appear as an agreed

fact in the case as stated. This seems to have been an instance in which the contractor did not attempt to impose unearned costs upon the Government and evidently concluded that the selling costs incurred had been fully covered by the sums paid on the goods actually delivered, which seems entirely reasonable. Who is in a better position to judge the actual incurred costs than the contractor? As the case stated was presented plaintiff is entitled to receive either all or none of his claim so that it would not be possible to allocate a portion of his claim to incurred costs even if it seemed proper and equitable. In plaintiff's very excellent brief a number of cases are cited to indicate that a salesman is entitled to commission regardless of the lack of delivery, where there was an actual sale, but none of the cases involves a Government contract containing a termination clause binding alike on employer and employe. One case cited by defendant in support of its theory is somewhat similar to the case at bar in that it involves a suit for commissions by an agent on a contract which was terminated on the request of an agency of the Government. In that case, Republic Foreign Products Co., to use, v. Southwark Foundry & Machine Co., 269 Pa. 522, judgment was entered for plaintiff on the pleadings for want of a sufficient affidavit of defense. This situation arose during World War I and the reasoning of the court as expressed in the following quotation is applicable to the present situation:

"As already noted, the contracting parties had provided for the contingency of governmental interference, and assent to this stipulation had been given by the agent at the time of the making of the promise to pay commissions. There is, however, no proper averment in the pleadings that the performance of the contract was either forbidden or prohibited by a governmental order. There is no allegation that it commandeered the plant of the defendant company, or forbade it to carry

out its contract with private concerns, or, by proper order, did any act which so changed the conditions as to make the carrying out of the agreement impossible, or to render it in effect a new and different undertaking. . . . Taking the affidavit as a whole, there is a failure to set forth such facts as would justify the court in saying that an impossibility of performance, which would excuse the defendant, was created by government intervention."

Thus it clearly appears that an impossibility of performance by Government order under these circumstances would have excused defendant from its obligation. The same reasoning and rule apply in the instant case. True, it has been held that a manufacturer's costs to be included in determining fair compensation to be paid on the termination of war contracts must be liberally construed as including all legitimate costs and expenses necessarily incurred in conducting the business: Allis-Chalmers Mfg. Co. v. United States, 165 F. (2d) 495; and that this might well include proper engineering and selling costs, but as previously stated who is in better position to judge those proper costs than the manufacturer? And when the manufacturer determined, as was apparent here, that the selling costs had already been absorbed in the payments received for goods actually delivered, then this should be final and conclusive.

Defendant submits that plaintiff's claim is barred because it is in the form of a commission and in the Army-Navy Contractors' Guide, issued jointly by the War and Navy Departments, "contingent fees and commissions" are set forth as costs which may not be included in termination of war contracts. However, we do not deem this a valid defense as this stipulation is to be construed in the same manner that the original covenant against contingent fees in war contracts generally has been construed, to the effect that it does not

bar the payment of a commission to a bona fide selling agent of the contractor. There seems no dispute that plaintiff was so employed. See Reynolds v. Goodwin-Hill Corporation, 154 F. (2d) 553; North American Iron & Steel Co. v. Navy Dept., proceeding no. 116, appeal board.

Pursuant to the agreed statement of facts and exhibits as filed and the within opinion we conclude that plaintiff did not secure valid, enforcible contracts as a whole from the Government but the contracts were subject to termination at any time by the Government and that such termination barred plaintiff from further commissions on the contract as a whole, and therefore enter the following

### Order

And now, to wit, August 22, 1949, in accordance with the agreement of the parties in the case stated, it is ordered, adjudged and decreed that judgment be entered in favor of York-Shipley, Inc., defendant, and against Edward P. Fahey, plaintiff, with costs of suit.